UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ALTI HASKELL,

                *Plaintiff*,

                                                                                       **ORDER**

                                                                                       22-CV-1713 (OEM)(JMW)

       -against-

COUNTY OF NASSAU and JAMES E. DZURENDA,
*Sheriff Nassau County Sheriff's Department, in his
individual and official capacity*,

                *Defendants*.
------------------------------------------------------------------------X

**WICKS**, Magistrate Judge:

      Plaintiff, Alti Haskell ("Plaintiff") commenced this action against the County of Nassau, former Nassau County Sheriff, James E. Dzurenda ("Dzurenda"), Chief Clerk Nassau County Courthouse, Donald Vetter, and John Doe C240MXV (collectively, "Defendants")[1] on March 8, 2022, pursuant to 42 U.S.C. § 1983 alleging violations of due process, Eighth Amendment, and 42 U.S.C. § 1988 violations, as well as for wrongful imprisonment under New York law, claiming Defendants intentionally and wrongfully held him in custody of the Nassau County Correctional Center beyond his conditional release date. (ECF No. 1 at ¶¶ 7-9.) As the discovery deadline draws near, Plaintiff seeks the deposition of – and interrogatory responses from – Defendant Dzurenda, which Defendants strenuously oppose. As such, the latest application before the Court is Defendants' request for a protective order seeking to strike Plaintiff's notice of deposition and second set of interrogatories addressed to Dzurenda (ECF Nos. 26, 27), which

---

[1] This Court dismissed the action as to Defendants John Doe C240MXV and Donald Vetter on January 4, 2023. (Electronic Order dated January 4, 2023.)

is opposed by Plaintiff. (ECF No. 31.) For the following reasons, Defendants' Motion to Strike (ECF No. 27) is **DENIED**.

## BACKGROUND

Plaintiff specifically alleges that on July 17, 2019, he and Anthony Conley were arrested together and charged with Criminal Sale of a Controlled Substance in the 5th Degree and Conspiracy to Sale of a Controlled Substance in the 5$^{the}$ Degree. (ECF No. 1 at ¶ 1.) Plaintiff and Mr. Conley were held in the custody of the Nassau County Correctional Center. (*Id*. at ¶ 2.) Plaintiff and Mr. Conley pled guilty to both charges and were sentenced on March 25, 2021, to a determinative sentence of two years in prison. (*Id.* at ¶ 3-4.) Plaintiff alleges that he and Mr. Conley were legally entitled to be immediately released from custody, on March 27, 2021, and March 26, 2021, respectively, having already served pre-trial detention the entire State sentenced imposed by the Honorable William O'Brien on March 25, 2021, upon reaching their conditional release date[2] in accordance with New York State law. (*Id.* at ¶ 5.)

While Mr. Conley was immediately released from custody of the Nassau County Sheriff's Department on March 26, 2021, Plaintiff alleges that the Nassau County Sheriff's Department held him in custody beyond his conditional release date. (*Id*. at ¶ 6-7.) Plaintiff further alleges that his counsel was informed on April 14, 2021, that his release date had not been calculated and he could not be transferred to the New York State Department of Corrections and Community Supervision ("NYSDOCCS") because he had not been made "state

---

[2] "Conditional Release Date" is the statutorily mandated release date calculated by applying both an inmates' good time and jail time, or time served while awaiting trial. *See Eiseman v. New York*, 511 N.E. 2d 1128 (N.Y. 1987). Specifically, the conditional release date is calculated by adding "the number of pre- and post-term trial custody days served, plus the number of approved days earned for good behavior." *Id*.

ready" by the personnel at the Nassau County Sheriff's Department. (*Id*. at ¶ 129.)[3] Plaintiff alleges he was transferred to the Downstate Correctional Facility on May 12, 2021, and released from State custody on May 27, 2021. (*Id*. at ¶ 8.) Plaintiff seeks monetary compensation pursuant to 42 U.S.C § 1983, 42 U.S.C § 1988, and pursuant to New York State law for his alleged wrongful imprisonment in violation of the due process clause. (*Id*. at ¶ 10.) Plaintiff additionally alleges Eighth Amendment violations for cruel and unusual punishment suffered for the alleged sixty days of "unlawful prolonged incarceration." (*Id*. at ¶ 11.)

On August 25, 2023, Plaintiff's counsel raised a discovery dispute regarding the sufficiency of Defendants' document production and interrogatory responses, and the parties were directed to, on or before September 8, 2023, meet and confer in good faith to resolve their dispute and complete any outstanding paper discovery. (ECF No. 21.) On September 18, 2023, the Court extended the deadline for the remaining fact discovery is extended to December 1, 2023. (ECF No. 23.) On December 12, 2023, the undersigned directed Counsel for Defendant to supply all outstanding responses to interrogatories to Counsel for Plaintiff on or before December 22, 2023, and extended the end date of all fact discovery to March 29, 2024, noting that would be "the FINAL extension of dates and deadlines." (ECF No. 25.)

On December 20, 2023, Defendants filed their First Motion to Strike *the notice of deposition of former Nassau County Sheriff James E. Dzurenda and for an order striking plaintiff's second set of interrogatories directed to defendant Dzurenda*. (ECF No. 26.) Defendants argue that Dzurenda is a high-ranking government official that is not subject to depositions "absent a showing of need" under the Supreme Court's decision in *United State v.*

---

[3] According to Dzurenda, "[o]nce an inmate is sentenced to NYSDOC prison, he is offered the opportunity to have his property in his cell added to his existing property for pick up by someone he chooses, or it get[s] sent upstate with him. NYSDOC determines when they will accept the inmate. They will notify the jail when they are ready." (ECF No. 26-1 at 4.)

3

*Morgan*, 313 U.S. 409 (1941) ("*Morgan*"), and the Second Circuit's decision in *Lederman v. N.Y.C. Dep't of Parks & Rec.*, 731 F.3d 199, 203 (2d Cir. 2013) ("*Lederman*"), and that Plaintiff has not otherwise demonstrated a need for Dzurenda's deposition. (*Id.* at 2.)

Specifically, Defendant argues that Dzurenda has no personal knowledge of Plaintiff's conviction, sentencing, state readiness, and release, and that the information Plaintiff is seeking is available from another individual – Nassau County Correctional Officer Ron Ley – who Defendant claims "has knowledge of the state readiness processing of [P]laintiff, knowledge of the paperwork involved, knowledge of what is necessary from the State, and knowledge of why Plaintiff's accomplice was released prior to Plaintiff." (*Id.*) With respect to the interrogatories, Defendants argue that the Second Set of Interrogatories directed to Dzurenda "solicit the same information" as the First Set of Interrogatories, "or are improper questions that call for an explanation and conclusion of law." (*Id.*) Defendants further note that the Second Set of Interrogatories also request Defendants to produce the New York State policies and procedures for State Ready Inmates number CD 02-10-01, that, along with all of Plaintiff's grievance documents, inmate facility documents, and state ready documents, have already been provided to Plaintiff's counsel. (*Id.*)

The undersigned denied Defendants' Motion to Strike (ECF No. 26) without prejudice and with leave to renew, on the grounds that Defendants' motion "fail[ed] to include a certification that the parties met and conferred in an attempt to resolve the issues without judicial intervention." (Electronic Order dated December 21, 2023.) On December 27, 2023, Defendants filed their Renewed Motion to Strike, composed of a Letter informing the Court that the parties met and conferred, but were unable to resolve the issues presented in the motion. (ECF No. 27.)

4

On January 7, 2024, Plaintiff filed his Response in Opposition to Defendants' Renewed Motion to Strike. (ECF No. 31.) Plaintiff argues that Dzurenda is not a "high-ranking government official" shielded from giving testimony, and that *Morgan* is otherwise distinguishable from the instant action because: (i) Plaintiff is "accusing the Defendants of violating his constitutional rights by depriving him of his right to liberty arising under the Fourteenth Amendment to the Constitution of the United States for which Plaintiff was deprived of his liberty for approximately sixty days, forty-five of which were in the Nassau County jail beyond Plaintiff's Condition Release Date," and (ii) Dzurenda "is believed to have been the person responsible for the management of the facility and the supervision of subordinates in releasing inmates from custody upon court orders and upon completion of the terms of such inmate's imprisonment." (ECF No. 31 at 5-6.)

With respect to the interrogatories, Plaintiff argues that he submitted his Second Set of Interrogatories on Defendants because the responses submitted by Defendants were "non-responsive to [his] original request." (*Id*. at 7-8.) Plaintiff maintains that his Second Set of Interrogatories "relate directly to [Plaintiff's] claims set forth in his Complaint thar he was held beyond his [conditional release date] for which the defendants are liable." (*Id*. at 8.) Plaintiff further maintains that Defendants possess knowledge "regarding training and supervision of correctional staff at the Nassau County Correctional Center related to inmates' rights to be released from custody upon reaching [their] conditional release dates and upon being transferred from the local correctional facility into New York State custody. (*Id*. at 9.) Plaintiff requests that this Court deny Defendants' Renewed Motion to Strike in its entirety, and order Dzurenda to appear at a deposition and respond to Plaintiff's Second Set of Interrogatories. (*Id*.)

5

## THE LEGAL FRAMEWORK

Federal Rule of Civil Procedure 26(b)(1) "permits a party, subject to the limitations of Rule 26(b)(2)(C), to 'obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense....'" *In re Commodity Exch., Inc., Gold Futures & Options Trading Litig.*, No. 14-MC-2548 (VEC), 2021 WL 2481835, at *2 (S.D.N.Y. June 17, 2021) (quoting Fed. R. Civ. P. 26(b)(1)); *Mallinckrodt Chem. Works v. Goldman, Sachs & Co.*, 58 F.R.D. 348, 353 (S.D.N.Y. 1973) ("[D]iscovery should be relevant where there is any possibility that the information sought may be relevant to the subject matter of the action.").

Parties seeking cover from discovery may avail themselves of a motion for a protective order under Rule 26(c), which affords protection for abusive or embarrassing discovery, providing that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ." Fed. R. Civ. P. 26(c)(1); *see Gordon v. Target Corp.*, 318 F.R.D. 242, 246 (E.D.N.Y. 2016) ("[T]he touchstone for determining whether to issue a protective order under Rule 26(c) lies, in the first instance, on a party's ability to establish good cause").

The burden is on the party seeking issuance of the order to show "good cause" through "particular and specific facts" as opposed to "conclusory assertions." *Rofail v. United States*, 227 F.R.D. 53, 54–55 (E.D.N.Y. 2005); *McNamee v. Clemens*, No. 09 CV 1647 (SJ), 2014 WL 12775660, at *14 (E.D.N.Y. Jan. 30, 2014) (Under the Federal Rules, the party that resists discovery has the burden of specifying to the court why the discovery is objectionable . . . [t]he Court is not required to speculate as to the nature or basis of [the movant's] claims."); *In re Air Crash Near Clarence Ctr., New York, on Feb. 12, 2009*, 277 F.R.D. 251, 254 (W.D.N.Y. 2011)

6

("Objections must clearly set forth the specifics of each objection and how that objection relates to the discovery being demanded . . . [p]at, generic, boilerplate, and non-specific objections will not suffice."). Specifically:

> A party opposing a discovery request cannot make conclusory allegations that a request is irrelevant, immaterial, unduly burdensome[,] or overly broad. Instead[,] the party resisting discovery must show specifically how each discovery request is irrelevant, immaterial, unduly burdensome or overly broad.

*Obiajulu v. City of Rochester, Dep't of L.*, 166 F.R.D. 293, 295 (W.D.N.Y. 1996) (internal quotations omitted).

"If the movant establishes good cause for protection, the court may balance the countervailing interests to determine whether to exercise discretion and grant the order." *Id.* at 55. "Because of the interest in broad discovery, the party opposing the discovery of relevant information, whether through a privilege or protective order, bears the burden of showing that based on the balance of interests the information should not be disclosed." *Fowler-Washington v. City of New York*, No. 19-CV-6590 (KAM)(JO), 2020 WL 5893817, at *3 (E.D.N.Y. Oct. 5, 2020) (internal quotation and citation omitted).

Rule 26(b)(2)(C) additionally requires courts to limit "the frequency or extent of discovery" if it determines that it is "unreasonably cumulative or duplicative" or if "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(i)–(ii). *See In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008) (While a "party must be afforded a meaningful opportunity to establish the facts necessary to support his claim," a "district court has wide latitude to determine the scope of discovery."). It is with these principles in mind that the Court considers Defendants' motion.

7

## DISCUSSION

**I. Deposition of Dzurenda Must Go Forward**

The parties' primary dispute revolves around whether the deposition of former Nassau County Sheriff, James E. Dzurenda should be permitted, in light of the standard governing depositions of "high ranking government officials" articulated in *Morgan* and *Lederman*. In *Morgan*, the Supreme Court "expressed concern that the District Court had required a high-ranking government official—the Secretary of Agriculture—to submit to a deposition. Since then, courts have relied on *Morgan* to hold that a high-ranking government official should not—absent exceptional circumstances—be deposed or called to testify regarding the reasons for taking official action, 'including the manner and extent of his study of the record and his consultation with subordinates.'" *Lederman*, 731 F.3d at 203 (quoting *Morgan,* 313 U.S. at 422) (collecting cases).

Likewise, *Lederman* stands for the proposition that "high ranking government officials" should not be "subject to depositions[,]" as these officials "have greater duties and time constraints than other witnesses," and, "[i]f courts did not limit these depositions, such officials would spend an inordinate amount of time tending to pending litigation." *Marisol A. by Forbes v. Giuliani*, No. 95 Civ. 10533, 1998 WL 132810, at *2 (S.D.N.Y. Mar. 23, 1998); *Lederman*, 731 F.3d at 203; *cf. Markowitz v. Precipart Corp.,* 2022 WL 1508638 (E.D.N.Y. Apr. 15, 2022) (apex deposition of high-ranking corporate executives given special scrutiny by the courts).

The Second Circuit crafted an exception to this general rule in *Lederman*, requiring a party to demonstrate "exceptional circumstances" to depose a high-ranking official. *Id*. For example, the party must establish: (i) "that the official has unique first-hand knowledge related to

8

the litigated claims[;]" or (ii) "that the necessary information cannot be obtained through other, less burdensome or intrusive means." *Id*.

In *Lederman*, visual artists who sold their work on sidewalks and in public parks sued the New York City Department of Parks and Recreation, challenging constitutionality of revisions to rules governing where "expressive matter vendors" could sell their wares. *Id*. at 201. During discovery, plaintiffs sought to take the depositions of Mayor Bloomberg and former Deputy Mayor Edward Skyler. *Id*. The Second Circuit held plaintiffs did not demonstrate "exceptional circumstances" warranting the depositions of the Mayor and Deputy Mayor because plaintiffs "did not identify with particularity the information they needed, nor did they contend that Bloomberg and Skyler had first-hand knowledge about the litigated claims or that the relevant information could not be obtained elsewhere." *Id*. at 203. Moreover, the Court determined plaintiffs did not show that Bloomberg and Skyler had the information they were seeking from then-Parks Commissioner Adrian Benepe," whom plaintiffs previously deposed and who was a named defendant in the suit. *Id*.

Here, Plaintiff seeks to examine Dzurenda regarding the policies for the conviction, sentencing, state readiness and release of prisoners at the Nassau County Correctional Center and the Nassau County Sheriff's Department, as well as the specifics of Plaintiff's conviction, sentencing, state readiness and eventual release. (ECF No. 26 at 2.) Defendants argue Plaintiff fails to establish "exceptional circumstances" justifying the depositions of Dzurenda under *Lederman*, claiming there is no evidence to suggest Dzurenda has first-hand knowledge regarding Plaintiff's claims, and Plaintiff can obtain the information needed from another individual – Nassau County Correctional Officer Ron Ley – who Defendant claims "has knowledge of the state readiness processing of [P]laintiff, knowledge of the paperwork involved,

9

knowledge of what is necessary from the State, and knowledge of why Plaintiff's accomplice was released prior to Plaintiff." (*Id*. at 2-3.) The Court disagrees.

Defendants' reliance on *Lederman* is inapposite, as the plaintiffs' deposition request in *Lederman* is materially distinguishable from this case. Unlike the Mayor and Deputy in *Lederman*, Dzurenda is not only named defendants in the lawsuit, but is the former Sheriff of the Department whose very policies are being challenged. (*See* ECF No. 26-1 at 4.) While Dzurenda may lack first-hand knowledge regarding the *specifics* of Plaintiff's conviction, sentencing, state readiness and eventual release, he readily admitted that the Nassau County Sheriff's Department "takes reasonable measures in getting inmates State Ready." (ECF No. 26-1.) And, as the former Sheriff of the Department from March 2020 to September 2022, Dzurenda was ultimately the "person responsible for the management of the facility and the supervision of subordinates in releasing inmates from custody upon court orders and upon completion of the terms of such inmate's imprisonment." (ECF No. 31 at 6.)

At the February 14, 2024 Status Conference before the undersigned, Plaintiff further argued "that the necessary information cannot be obtained through other, less burdensome or intrusive means." *Lederman*, 731 F.3d at 203. To this end, unlike the plaintiffs in *Lederman*, Plaintiff has demonstrated that Dzurenda has or should have first-hand knowledge of Plaintiff's claims, which was not – and cannot be – obtained from other individuals. As such, Plaintiff has presented "exceptional circumstances" warranting the deposition of Dzurenda. Defendants have simply not demonstrated good cause for preventing Plaintiff from taking Dzurenda's deposition.

## II. Plaintiff's Second Set of Interrogatories

As to Plaintiff's Second Set of Interrogatories, Defendants specifically objects to those interrogatories directed towards to Dzurenda, on the grounds that they "solicit the same information" as the First Set of Interrogatories, "or are improper questions that call for an

explanation and conclusion of law." (ECF No. 26-2.) The Court finds that Interrogatory Nos. 1 through 13 in Plaintiff's Second Set of Interrogatories relate directly to Plaintiff's claims that he was held beyond his conditional release date, and are relevant to determine Dzurenda's alleged knowledge "regarding training and supervision of correctional staff at the Nassau County Correctional Center related to inmates' rights to be released from custody upon reaching [their] conditional release dates and upon being transferred from the local correctional facility into New York State custody." (ECF No. 31 at 9.)

Defendants' allegations that Plaintiff seeks to elicit information previously asked for in his First Set of Interrogatories and already furnished by Defendants is unsupported by the record, as Defendants "have failed to indicate which answers to the [Plaintiff's First Set of Interrogatories] contain[ed] the desired information. *See Anderson v. United Air Lines, Inc.*, 49 F.R.D. 144, 147 (S.D.N.Y. 1969) ("On a motion to vacate interrogatories on the ground that they have previously been answered . . . it is not the Court's function to sift the depositions or responses to determine whether the interrogatories are sufficiently answered therein; rather, the movant is obliged to indicate exactly where in the responses the answers to the interrogatories may be found.").

Defendants' general objection to Interrogatory Nos. 1 through 13 on the grounds that they call for opinions and conclusions is also without merit, as the Interrogatories request factual information regarding the policies for the conviction, sentencing, state readiness and release of prisoners at the Nassau County Correctional Center and the Nassau County Sheriff's Department, as well as the specifics of Plaintiff's conviction, sentencing, state readiness and eventual release. *See* ECF No. 26-2 at 2. Indeed, "interrogatories are not objectionable merely because they seek to elicit opinions or conclusions." *Anderson*, 49 F.R.D. at 148 (collecting

11

cases); Fed. R. Civ. P. 33 ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact.") Accordingly, Defendants are directed to respond to the outstanding Interrogatories.

## **CONCLUSION**

For the reasons set forth herein, Defendants' Renewed Motion to Strike (ECF No. 27) is denied. Defendants are directed to respond to the outstanding Interrogatories on or before February 28, 2024. Plaintiff is directed to complete the deposition of Dzurenda on or before the close of fact discovery, namely, March 29, 2024.

Dated: Central Islip, New York
       February 14, 2024

S O   O R D E R E D:

/S/ *James M. Wicks*
    JAMES M. WICKS
  United States Magistrate Judge